# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **NOREELDEEN ABDULKARIM,** ) | |
| ) | |
| **Plaintiff,** ) | No. 3:15-cv-00040 |
| ) | Senior Judge Nixon |
| v. ) | |
| ) | |
| **METROPOLITAN SHERIFF DEPARTMENT,** ) | |
| *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## M E M O R A N D U M

Plaintiff Noreeldeen Abdulkarim (#352923), an inmate housed at the Davidson County Sheriff's Office in Nashville, Tennessee, brings this *pro se, in forma pauperis* action against the Metropolitan Police Department, Sheriff Daron Hall, Chaplain f/n/u Molding, A.B.L. Food, V. Dulin, and Dan Weikal, alleging various civil rights claims under 42 U.S.C. § 1983. (Docket No. 1).

The plaintiff's complaint is before the Court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

## I. PLRA Screening Standard

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary

1

dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. Section 1983 Standard

Plaintiff Abudulkarim seeks relief pursuant to § 1983. To state a claim under § 1983, the plaintiff must allege and show: (1) that he was deprived of a right secured by the Constitution or

laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

**IV.  Alleged Facts**

The complaint alleges that, during the plaintiff's incarceration at the Davidson County Jail, Brickman, a male corrections officer, sexually assaulted the plaintiff by squeezing his genitalia. In addition, Abdulkarim claims that Brickman and Molding, the facility chaplain, verbally abused the plaintiff. The complaint additionally alleges that Briggs, a male corrections officer, punished the plaintiff by squeezing the plaintiff's penis "several times."

The complaint further alleges that the plaintiff has found roaches and hair in his food, and the food trays are wet and dirty. The complaint alleges that there is not enough food for the inmates, and the food that is served tastes like dish detergent.

According to the complaint, there is a ventilation problem and fire hazard for maximum security inmates. Finally, the complaint alleges that no Muslim religious services are provided to Muslim inmates such as the plaintiff. The plaintiff alleges that he has filed grievances concerning these problems, but no one has responded to his complaints. (Docket No. 1 at pp. 3-5).

**V.  Analysis**

**A.  Claims against the "Metropolitan Sheriff Department"**

"The Metropolitan Sheriff Department" is an agency or unit of the Metropolitan Government of Nashville and Davidson County ("Metro Government") and is not a suable entity itself. *See*

3

*Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10–cv–0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit.")(collecting cases)).

Giving this *pro se* complaint a liberal construction, the court could construe the plaintiff's complaint as an attempt to state a claim against Metro Government. However, while Metro Government is a suable entity, it is responsible under § 1983 only for its " own illegal acts. [It is] not vicariously liable under § 1983 for [its] employees' actions." *Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal citations and quotation marks omitted). A municipality may be liable under § 1983 "only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014)(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359. Thus, to state a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Construing the *pro se* plaintiff's allegations liberally, the complaint alleges the existence of

4

official policies adopted by Metro Government that caused or contributed to the harm alleged by the plaintiff. Thus, for now, Metro Government will remain as a defendant in this action.

**B.     Verbal abuse claims**

Abdulkarim contends that defendants Brickman and Molding taunted or verbally abused him. However, it is well established that verbal harassment or abuse–standing alone–is not sufficient to state a constitutional deprivation under section 1983. *Gibson v. Cox,* 711 F. Supp. 354, 355 (E.D. Mich. 1989)(citing *Oltarzewski v. Ruggiero,* 830 F.2d 136 (9th Cir.1987); *Hikel v. King*, 659 F. Supp. 337 (E.D. N.Y.1987); *Zeno v. Cropper*, 650 F. Supp. 138 (S.D. N.Y.1986); *Freeman v. Trudell*, 497 F. Supp. 481 (E.D. Mich.1980)). Thus, the plaintiff cannot recover on claims of verbal abuse.

**C.     Section 1983 official capacity claims for monetary damages**

The plaintiff's § 1983 claims for monetary damages against Metro Government and the individual defendants in their official capacities are barred by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989). Thus, those claims must be dismissed.

**D.     Section 1983 failure to respond to grievances claims**

Some of the plaintiff's § 1983 claims are premised on a defendant's response, or lack of response, to the plaintiff's grievances and/or complaints. Although the plaintiff may feel that his grievances were not taken seriously or handled properly, a plaintiff cannot premise a § 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective jail grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams*

*v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the plaintiff's claims based on any defendant's failure to respond to plaintiff's grievances do not state a claim upon which relief can be granted. These claims will be dismissed.

**E. Food safety and diet claims**

Abdulkarim claims that he has found roaches and hair in his food. He states that the food trays are wet and food from previous meals stuck is on the trays even after they are "cleaned." He alleges that there is not enough food for the inmates, and the food that is served tastes like dish detergent. He says the dirty trays have caused sickness. (Docket No. 1 at p. 4).

Allegations of unsanitary eating conditions and inadequate food may constitute violations of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825 832 (1994); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). Likewise, depriving an inmate of food, or serving him contaminated food, establishes grounds for a violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S 337, 348 (1981). The Court therefore finds that the plaintiff has stated a colorable Eighth Amendment claim based on these allegations.

**F. Sexual abuse**

The complaint alleges that, on at least one occasions, Brickman sexually assaulted the plaintiff by squeezing his testicles. The complaint additionally alleges that Briggs punished the plaintiff by squeezing his penis "several times" and threatened to do it again if inmates acted out.

Taking the plaintiff's allegations as true for purposes of the PLRA initial screening, the Court finds that these allegations state actionable claims. "Sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual

punishment." *Howard v. Taggart*, 2007 WL 2840369, at *8 (N.D. Ohio Sept. 27, 2007)(citing the Second, Eighth, and Ninth Circuits); *Perkins v. Jacobson,* 2013 WL 3776303, at *2(W.D. Mich. July 17, 2013)("There is clearly established law in this district that sexual harassment of an inmate can violate the Eighth Amendment when that harassment causes pain and the officer in question acts with a sufficiently culpable state of mind."); *Gilson v. Cox*, 711 F. Supp. 354, 356 (E.D. Mich. 1989)(finding that "a reasonable jury could determine that Cox'[s] conduct was shocking to its conscience, thereby constituting a violation of Gilson's substantive due process rights" when male inmates alleged that female corrections officer made various sexual advances and grabbed his genitals and buttocks). Thus, these claims against Brickman and Briggs will be permitted to proceed.

### G. Housing safety concerns

With respect to housing concerns, the complaint first alleges that the plaintiff's cell lacks adequate ventilation and that the plaintiff "had to lay on the floor to get air because everything else is blocked off." (Docket No. 1 at p. 5).

In extreme circumstances, courts have found that inadequate ventilation may result in a sufficiently serious risk to prisoner safety under the Eighth Amendment. *See, e.g., White v. Monohan*, 326 F. App'x 385, 387–88 (7th Cir. 2009) (reversing district court dismissal of claim alleging that inadequate ventilation permitted temperatures to reach 110 degrees during the summer months); *Gates v. Cook*, 376 F.3d 323, 339–40 (5th Cir. 2004) (finding that the Eighth Amendment was violated by a ventilation system that allowed summer temperatures to average in the 90s, unless prison officials took measures to ameliorate the heat by providing fans, ice water and daily showers); *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (allowing a prisoner's claim that his cell was

7

"[s]aturated with the [f]umes of [f]eces (thrown by some inmates), the smell of urine and vomit as well as other stale body odors" to proceed).

However, absent such extreme conditions raising serious risks to prisoner health, courts routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (upholding the dismissal of a prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation); *Jasman v. Schmidt*, 4 F. App'x 233, 235–36 (6th Cir. 2001) (affirming dismissal of a claim that the weatherstripping on the doors of the cells at a Michigan prison prevented air circulation and resulted in inadequate ventilation); *Davis v. Crowley*, No. 00–1475, 2000 WL 1871891, at *2 (6th Cir. Dec. 12, 2000) (concluding that a plaintiff's allegations that a ventilation system smelled strongly of gas did not allege a sufficiently serious harm where, despite his allegations that the fumes caused him to experience shortness of breath and watery eyes, the plaintiff failed to allege a substantial risk of serious harm); *Thompson v. Cnty. of Medina*, 29 F.3d 238, 244 (6th Cir. 1994) (upholding a dismissal of pretrial detainees' claim that a jail had inadequate ventilation); *King v. Berghuis*, No. 1:10–cv–57, 2010 WL 565373, at *3 (W.D. Mich. Feb.13, 2010) (dismissing prisoners' claim alleging that ventilation system moves less than 10 cubic feet of air and caused headaches).

In the instant case, the plaintiff fails to allege that the defendants have subjected him to an objectively serious deprivation. The plaintiff fails to allege any specific facts regarding the ventilation, such as the presence of fumes, a smell of gas, or any other facts supporting a conclusion that there was a problem with ventilation. Nor does he allege a specific injury or diagnosis showing that he was harmed due to lack of ventilation. *See Jasman*, 4 F. App'x at 236 (rejecting prisoner

8

complaint about poor ventilation where plaintiff failed to allege harm caused by the ventilation). Consequently, the plaintiff's allegations create no inference of a serious risk to his health or safety, and his claims about inadequate ventilation fail to survive the required PLRA screening.

With respect to the plaintiff's complaint that he is being improperly housed on "lock down" with other maximum security inmates, the plaintiff's allegations do not demonstrate any actual injury sustained by the plaintiff as a result of housing arrangements. These allegations, too, fail to state grounds for relief.

### H. Muslim services

Finally, the complaint alleges that defendant Molding, the jail chaplain, told the plaintiff, who is a Muslim, that the jail would not provide Muslim services to inmates and that "he don't [sic] know why all black people wants to be Muslim, Muslims are terrorists." (Docket No. 1 at p. 3). According to the complaint, Molding told the plaintiff that if he "was a Christian [he] wouldn't have to worry about [his] food, or Muslim services." (*Id.*)

"Inmates clearly retain protections afforded by the First Amendment . . . , including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L.Ed.2d 282 (1987) (citation omitted). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system . . . . The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* (internal quotation marks, alteration and citation omitted). Thus, "when a prison regulation imposes on inmates' constitutional rights, the regulation is valid if it is reasonably related to

9

legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987), and is not an "exaggerated response to such objectives,'" *id*. (internal quotation marks omitted).

It is unclear from the record presently before the Court whether the plaintiff is permitted other avenues by which to practice his Muslim faith. It is unknown whether the plaintiff is the only inmate requesting Muslim services. However, taking the plaintiff's *pro se* allegations at face value, the Court finds that the complaint states a colorable First Amendment claim pursuant to § 1983 with respect to Abudulkarim's contention that the jail refuses to provide any Muslim religious services for inmates. This claim will be permitted to proceed for further development.

## VI. Conclusion

As set forth above, the plaintiff's allegations pertaining to verbal abuse, failure to respond to grievances, improper ventilation, and housing on "lock down" with other maximum security inmates fail to state § 1983 claims upon which relief can be granted, and those claims must be dismissed under the PLRA. Likewise, the plaintiff's claims for money damages against Metro Government and all defendants in their official capacities must be dismissed. However, the plaintiff has stated a number of colorable § 1983 claims, as set forth in detail above, and those claims will be permitted to proceed.

An appropriate order will follow.

_____
Judge John T. Nixon
Senior United States District Judge